## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **J'AMY KLUENDER,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES LIABILITY** | **NO.  22-3650** |
| **INSURANCE CO., INC.,** | |
| **Defendant.** | |

## MEMORANDUM

**J. Hodge**                                                               **March 21, 2025**

Plaintiff J'Amy Kluender ("Plaintiff") initiated the present suit against United States Liability Insurance Co., Inc. ("USLI", "Defendant"). Plaintiff filed an Amended Complaint on March 13, 2023 (ECF No. 21) and filed a Second Amended Complaint ("Complaint") on March 24, 2023. (ECF No. 28.) In the Complaint, Plaintiff asserts claims under the Americans with Disabilities Act ("ADA") (Count One), the Family and Medical Leave Act ("FMLA") (Count Two), the Pennsylvania Human Relations Act ("PHRA") (Count Three),[1] and wrongful termination in violation of the Public Policy of the Commonwealth of Pennsylvania (18 P.S. § 4953) (Count Four).[2]

Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 87.) Plaintiff opposes the Motion. (ECF No. 92.) For the reasons set forth below, Defendant's Motion is granted.

---

[1]    The Court notes that Plaintiff includes three identical subclaims—retaliation, discrimination, and failure to accommodate—under Counts One (ADA) and Three (PHRA).

[2]    Plaintiff's wrongful termination claim (Count Four) was dismissed with prejudice on Defendant's partial motion to dismiss on March 27, 2024. (ECF No. 85.)

## I.    FACTUAL BACKGROUND[3]

Plaintiff began working as an Errors and Omissions Claims Examiner ("Claims Examiner") in the Claims Department of USLI on June 1, 2015 for Defendant. (ECF No. 28 ¶ 18; *see also* ECF No. 89 ¶ 2.) Plaintiff maintained the title and role of Claims Examiner throughout her employment with the Defendant and reported to different supervisors during this time. In 2018, Plaintiff reported to Professional Team Leader David Muir and did so through January 2020. (See ECF No. 89 ¶ 7.) In January 2020, following Muir's retirement, Plaintiff began reporting to Interim Professional Team Leader Lisa Coniglio and James Scalise, Executive Vice President and Chief Claims Officer. (*See* ECF No. 89 ¶ 17.) In May 2020, Plaintiff began reporting to Jennifer Haeberle, Professional Claims Teams Leader, who reported to Scalise. (ECF No. 28 ¶ 21; ECF No. 89 ¶ 20–21.)

On January 7, 2018, Plaintiff was diagnosed with thyroid cancer. (ECF No. 28 ¶ 22.) Following her diagnosis, Plaintiff informed her then-supervisor, David Muir, Scalise, and other employees, of her diagnosis. (ECF No. 28 ¶¶ 23–24.) Beginning in January of 2018, Plaintiff worked from home for approximately two weeks as an accommodation for her disability. (ECF No. 28 ¶ 26.) On January 30, 2018, Plaintiff went on approved FMLA leave ("FMLA Leave 1") (ECF No. 28 ¶ 27.) Plaintiff returned to work on February 14, 2018. (ECF No. 28 ¶ 29.) Plaintiff took FLMA leave again beginning on April 1, 2018 ("FMLA Leave 2"). (ECF No. 28 ¶ 30.) She returned to work on April 30, 2018. (ECF No. 28 ¶ 32.) Following Plaintiff's return from work on April 30, she alleges she was unjustly criticized regarding her performance. (ECF No. 28 ¶ 34.) Defendant states that Plaintiff received a 3% salary increase in 2018, along with a $5,500 annual discretionary bonus. (ECF No. 87-2, at 10–11.)

---

[3]    The Court adopts the pagination supplied by the CM/ECF docketing system.

On or about January 4, 2020, Plaintiff alleges that Defendant failed to promote her to Professional Lines Team Leader.[4] (ECF No. 28 ¶ 35.) Plaintiff alleges that she was not promoted due to her disability, her seeking reasonable accommodations, and for her use of FMLA leave. (ECF No. 28 ¶ 40.) On March 4, 2020, Plaintiff attended a business claims meeting where she was "combative" and "her tone and body language [were] unprofessional and disruptive." (ECF No. 87-2, at 11.) Plaintiff admitted to this behavior. (*Id.*) On March 9, 2020, Defendant placed Plaintiff on a sixty-day improvement plan based on how she behaved during a meeting on March 4, 2020. (ECF No. 28 ¶ 47.) On May 10, 2020, Plaintiff was, again, not promoted to Professional Lines Team Leader.[5] (ECF No. 28 ¶ 53.) Again, Plaintiff alleges that she was not promoted due to her disability, her seeking reasonable accommodations, and for her use of FMLA leave. (ECF No. 28 ¶ 59.) Around this time, Defendant assigned Plaintiff to what she describes as "more work than she was able to complete," and alleges that non-disabled employees were not given the same amount of work. (ECF No. 28 ¶ 61.)

On August 4, 2020, Plaintiff emailed Jeanie Rodgers, an employee in the Defendant's Employee Benefits Department, stating that Plaintiff's doctor was placing her on FMLA leave effective immediately ("FMLA Leave 3"). (ECF No. 28 ¶ 62.) On October 27, 2020, Plaintiff emailed Rodgers again informing her that she was cleared by her physician to return to work on November 2, 2020, and attached a doctor's note. (ECF No. 28 ¶ 65.) Plaintiff asked Rodgers to share the doctor's notes with Plaintiff's supervisors. Rodgers responded saying she would be in contact with Plaintiff's supervisors. (ECF No. 28 ¶ 66–67.) Plaintiff returned from FMLA Leave 3 on November 2, 2020.

---

[4]    This role was not posted so Plaintiff did not have the opportunity to apply. (ECF No. 28 ¶ 36.) Plaintiff alleges she would have applied if the position had been posted. (ECF No. 28 ¶ 37.)

[5]    This role was not posted so Plaintiff did not have the opportunity to apply. (ECF No. 28 ¶ 54.) Plaintiff alleges she would have applied if the position had been posted. (ECF No. 28 ¶ 55.)

On November 6, 2020, Plaintiff emailed her supervisor a note from her physician which stated that Plaintiff was cleared to return to work for 35 hours a week. (ECF No. 28 ¶ 69; ECF No. 87-3, at 209.) Plaintiff did not receive a response to this email. (ECF No. 28 ¶ 70.) Upon her return, Plaintiff was required to make-up missed work and was assigned new work, some of which was transferred from colleagues. (ECF No. 28 ¶ 71–72.) Plaintiff alleges that she was expected to complete more tasks, duties, and responsibilities "in the same timeframe as she would have been expected to complete the work had she not taken a leave of absence." (ECF No. 28 ¶ 74.) Plaintiff also alleges that Defendant failed to accommodate her 35-hour work week. (ECF No. 28 ¶ 77.) On December 4, 2020, Plaintiff received a smaller bonus than she had received in the two (2) prior years of her employment. (ECF No. 28 ¶ 78.) Plaintiff asserts that this smaller bonus amount was because of her disability, requests for accommodation, and use of protected leave. (ECF No. 28 ¶ 79.)

On December 10, 2020, Plaintiff sent an email to her supervisor, Haeberle, stating "Due to the scheduling of our training class over the lunch hour, I will use my lunch hour at the end of the day and log off at 4. This will allow me to accommodate my work restrictions while also participating in scheduled training." (ECF No. 28 ¶ 80.) As stated in the Complaint, Haeberle responded that she had "noted" this. (ECF No. 28 ¶ 80.) On December 14, 2020, as Plaintiff's then-supervisor Haeberle was communicating via email with her immediate past supervisor Coniglio, Plaintiff alleges she was unjustly criticized in a communication from Coniglio to Haeberle which said "[Plaintiff] does not work more than 35 hours. [Plaintiff] is at a 3 in that regard not a 5." (ECF No. 28 ¶ 81.) On that same day, Plaintiff had a performance review meeting with Haeberle and Coniglio where she claims she was unjustly criticized on her performance and was told she had a bad attitude. (ECF No. 28 ¶ 83.) Plaintiff added in her Complaint that her

accomplishments and positive client feedback were downplayed. (ECF No. 28 ¶ 84.) Defendant alleges, however, that Plaintiff received a positive performance evaluation and "in various categories, Haeberle gave [Plaintiff] higher ratings that [Plaintiff] gave herself." (ECF No. 87-2, at 12.)

On January 29, 2021, Plaintiff sent an email to Haeberle stating the following:

I've been unable to take any type of work day break Wednesday, Thursday or today due to mediation and Claim Center training (I am normally able to balance standard work meetings with my work restrictions). I am logging off now for that reason. Thank you and I hope you have a nice weekend.

(ECF No. 28 ¶ 85.) Haeberle did not respond to this email. (ECF No. 28 ¶ 86.) On February 19, 2021, Plaintiff sent another email to Haeberle stating the following:

On a daily basis I find I am working more than the 7 hours prescribed by my doctor on my return to work. I have zero free time during the day to leave my desk for a short break and more often than not I work through lunch to maintain my work load.

(ECF No. 28 ¶ 87.) Haeberle did not respond to this email. (ECF No. 28 ¶ 88.) Plaintiff continued to remind Haeberle of her accommodation requests by sending an email on February 25, 2021, through her performance review on March 29, 2021, and during a meeting with Haeberle on April 6, 2021. (ECF No. 28 ¶¶ 89–94.)

On April 22 and 23, 2021, Plaintiff was out on medical leave. (ECF No. 28 ¶ 96.) On April 29, 2021, Plaintiff alleges she received a smaller bonus than non-disabled employees and employees who had not sought reasonable accommodations. (ECF No. 28 ¶ 97.) On May 13, 2021, Plaintiff sent an email to Haeberle and Scalise detailing her accommodation requests and requesting further accommodations in light of her disability and the work being assigned to her. (ECF No. 28 ¶ 98.)

On May 18, 2021, Haeberle, copying Scalise, emailed Plaintiff denying her specific accommodation requests, but allowing Plaintiff to work part-time, as opposed to full time, if Plaintiff wished. (ECF No. 28 ¶ 103.) This would include an adjustment to salary and restriction of benefits, per the email sent by Haeberle. (ECF No. 28 ¶ 103.) On May 25, 2021, Plaintiff went out on a continuous leave of absence. (ECF No. 87-2, at 13.)

On June 30, 2021, Plaintiff filed a written charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (ECF No. 28 ¶ 105.) In July of 2021, Plaintiff was paid 75% of a $500 quarterly bonus. (ECF No. 28 ¶ 106.) Plaintiff alleges the partial percentage payment of her quarterly bonus was due to her being out sick. (ECF No. 28 ¶ 106.) From May 25, 2021 through February 27, 2023, Defendant continued to employ Plaintiff and provided her with health benefits. (ECF No. 87-2, at 13.)

On February 21, 2023, Plaintiff testified at a deposition in the present case. (ECF No. 28 ¶ 108.) Plaintiff was terminated on February 27, 2023. (ECF No. 28 ¶ 108.) Defendant alleges that Plaintiff was terminated because, during her deposition, Plaintiff admitted that she testified as a paid expert on more than one occasion on insurance cases and without seeking permission from Defendant in advance of doing so. Further, Plaintiff admitted to using USLI's computer systems to prepare and send her expert report for use in litigation against her former employer. (ECF No. 94 at ¶ 112; ECF No. 87-2, at 9.) Defendant alleges that this was against Defendant's "Code of Business Conduct and Ethics Policy." (*Id.*) Specifically, Scalise testified that he made the decision to terminate Kluender's employment because a USLI employee who provides expert testimony as to proper claims handling procedures places USLI at risk as a carrier in the future. (ECF No. 94 at ¶ 113.)

## II.    LEGAL STANDARD

A motion for summary judgment must be denied unless the moving party is able to show "no genuine dispute as to any material fact" and that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility" of identifying the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute is defined as one in which a jury could reasonably find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 447 U.S. 242, 248 (1986). In assessing materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When the defendant moves for summary judgment, "the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The summary judgment standard requires the court to view the evidence in the light most favorable to the non-moving party, including all justifiable inferences. *Anderson,* 447 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 248. If the court finds that any factual issues exist that could be reasonably resolved for either party, and thus requires the presence of a fact finder, then summary judgment must be denied. *Id.* at 250.

## III.    DISCUSSION

### A. Abandonment of Claims

Where a plaintiff fails to address a claim in their opposition to a summary judgment motion, it is proper for the Court to grant summary judgment on that issue. *See Carroll v. Lancaster Cnty.*,

301 F. Supp. 3d 486, 499–500 (E.D. Pa. 2018); *see also Morello v. Kenco Toyota Lift*, 142 F. Supp.

3d 378, 381 n.3 (E.D. Pa. 2015) (considering claim abandoned where not addressed in opposition

brief and granting summary judgment); *Cicchiello v. Beard*, 726 F.Supp.2d 522, 531 (M.D. Pa.

2010) (finding failure to address claim in brief in opposition to motion for summary judgment

constitutes abandonment of claim); *Aubrecht v. Pa. State Police*, 2009 WL 793634, at *9–10

(W.D. Pa. Mar. 23, 2009) (granting summary judgment as to plaintiff's claim not addressed in

plaintiff's brief in opposition); *Clarity Software, LLC v. Allianz Life Ins. Co.*, 2006 U.S. Dist.

LEXIS 56217, at *34 (W.D. Pa. Aug. 11, 2006) (granting summary judgment against plaintiff for

failure to address viability of claim in brief in opposition to motion for summary judgment).

Plaintiff has not addressed any of the Defendant's arguments in their Motion for Summary

Judgment on Plaintiff's ADA discrimination claims, PHRA discrimination claims and FMLA

interference and retaliation claims. Moreover, the Court notes that in choosing to remain silent as

to their position regarding the Defendant's arguments, Plaintiff has not only failed to provide any

opposition but, moreover, has not requested leave to file a surreply to oppose the Motion on

Plaintiff's ADA and PHRA discrimination claims, and FMLA interference and retaliation claims.

The Court having not received any argument in response that would be contrary to the Defendant,

accepts Plaintiff's silence as concession. Thus, the Court will grant Defendant's Motion for

Summary Judgment on those claims.

### B. Statute of Limitations

Defendant argues that several of Plaintiff's claims are time barred by statute. (ECF No. 87-

2, at 16–17.) The ADA provides a 300-day statute of limitations to bring a charge to the Equal

Employment Opportunity Commission ("EEOC"). *Selvato v. SEPTA*, 2015 WL 13620422, at n.1

(E.D. Pa. Feb. 13, 2015). The PHRA provides for a 180-day statute of limitations to bring a charge

with the Pennsylvania Human Relations Commission ("PHRC"). *Id*. Plaintiff brought her EEOC and PHRC charges on June 30, 2021. Again, similar to what the Court has noted above, Plaintiff does not oppose the arguments put forth by Defendant. As a result, seeing no argument presented by the Plaintiff to the contrary and taking Plaintiff's silence or lack of opposition as concession, the Court will only consider Defendant's actions taken after September 3, 2020 for Plaintiff's ADA claims, and Defendant's actions taken after January 1, 2021 for Plaintiff's PHRA claims.

### C. ADA and PHRA Retaliation and Failure to Accommodate Claims

Plaintiff alleges retaliation and failure to accommodate claims under the ADA and PHRA. The elements of retaliation under the ADA and PHRA are identical, therefore the Court will analyze them simultaneously. *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 422 (E.D. Pa. 2022). The same applies to failure to accommodate claims. *Rinehimer v. Cemcolift, Inc.*, 292 F. 3d 375, 382 (3d Cir. 2002).

#### i. Retaliation

In order to make a *prima facie* case of retaliation, Plaintiff must show (1) she was engaged in a protected activity, which can include informal protests of discriminatory employment practices such as making complaints to management, (2) adverse action was taken by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal connection between the protected activity and the adverse action. *Kacian v. Postmaster Gen. of the United States*, 653 F. App'x 125, 128 (3d Cir. 2016) (citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)). After establishing her *prima facie* case, the burden shifts to the employer to provide a "legitimate non-retaliatory reason" for the adverse action. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citing *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006)). After the employer provides a legitimate non-retaliatory reason, the burden shifts

back to the plaintiff to "convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action." *Id.* This multi-prong analysis mirrors the standard for retaliation clams under Title VII. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997). "The onus is on the plaintiff to establish causation at two stages of the case: initially, to demonstrate a causal connection as part of the prima facie case, and at the final stage of the *McDonnell Douglas* framework to satisfy her ultimate burden of persuasion by proving pretext." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

### A. Prima Facie Analysis

The Court will first address whether Plaintiff was engaged in protected activity. Plaintiff claims that the protected activity that she engaged in was testifying in her deposition for this case.[6] (ECF No. 92, at 6.) While Plaintiff does not cite any precedent from within the Third Circuit to support her argument that deposition testimony is a protected activity for the purposes of a retaliation claim, Plaintiff does cite authority from the Tenth, Eleventh, and Fourth Circuits that she asserts should guide and, thereby, persuade this Court. (*Id.* (citing *McGowan v. City of Eufala*, 472 F.3d 736, 744 (10th Cir. 2006); *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1350 (11th Cir. 2022); *Robbins v. Jefferson Cnty. Sch. Dist.*, 186 F.3d 1253, 1258 (10th Cir. 1999); *Glover v. South Carolina Law Enf't Div.*, 170 F.3d 411, 413 (4th Cir. 1999)).) These Circuits conclude that

---

[6]     The Court notes that the basis for Plaintiff's retaliation claim is distinct, legally and factually, from Plaintiff's wrongful termination claim (Count Four) that was previously dismissed by this Court. (ECF No. 85.) In granting the Defendant's partial motion to dismiss, the Court determined that the termination of Plaintiff for engaging in expert testimony in an unrelated case was not in violation of Pennsylvania law under 18 Pa. Cons. Stat. Ann. § 4953 (a)–(b). The current issue, however, is distinct because the Court is determining not whether Plaintiff's termination was unlawful within the context of her expert testimony, only whether she was retaliated against for participating in her deposition in the present case. The analysis of Plaintiff's expert testimony is only discussed to determine whether Plaintiff was terminated for violating Defendant's Policy, therefore supporting the fact that Defendant had a legitimate, non-discriminatory reason for her termination.

testifying in a deposition is a protected activity. *Id.* This is also supported by the ADA. The ADA states that:

> [n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. S 12203(a). The ADA explicitly makes it unlawful to discriminate against an individual for testifying in a proceeding under the ADA. As a result, the Court finds that testifying during a deposition would be protected activity under the ADA, satisfying the first prong of Plaintiff's *prima facie* retaliation claim. It is undisputed that adverse action was taken against Plaintiff after the protected activity. Plaintiff sat in for her deposition on February 21, 2023 and she was terminated on February 27, 2023—just six (6) days after her engagement in protected activity. Thus, satisfying the second prong of Plaintiff's prima facie case.

Next, the Court turns to causation. When the "temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality and defeat summary judgment." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 2012 WL 3140350, at *10 (3d Cir. 2012) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). There is no bright line rule as to what temporal proximity is considered "unduly suggestive," but courts have found anywhere from two days to three weeks as being unduly suggestive. *Id.* (collecting cases). Considering that the adverse employment action took place only 6 days after the protected activity, the Court finds that the temporally proximity of the two events meets the threshold definition of unduly suggestive. Thus, this fact does support causation between the protected activity and the termination, satisfying the third prong of a *prima facie* case of retaliation. Since all prongs of the test have been met, a *prima facie* case has established.

11

B.  Legitimate Non-Retaliatory Reason

Having found that a *prima facie* case has been met after applying the facts in evidence to the three-prong analysis, the Court must now consider whether the employer has a "legitimate non-retaliatory reason" for the adverse action. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). This is a low burden. *See Jenkins v. Ciocca Mgmt., Inc.*, 2025 WL 62803, at *9 (E.D. Pa. 2025). Defendant claims that if Plaintiff was fired due to conduct outside of the deposition, and not solely for taking the deposition, that her discharge would be legal, and not in violation of applicable statutory code. (ECF No. 95, at 5–6.) Defendant claims that Plaintiff's testimony during her deposition revealed that she violated Defendant's Code of Business Conduct and Ethics and Community Guidelines on Outside Activities Policy ("Policy"). Defendant's Policy states as follows:

> A conflict of interest exists when a person's private interest interferes in any way with the interests of the Company. A conflict can arise when a Covered Party takes actions or has interests that may make it difficult to perform his or her work for the Company objectively and effectively. Conflicts of interest may also arise when a Covered Party, or members of his or her family, receive improper personal benefits as a result of his or her position at the Company… Conflicts of interest may not always be clear-cut, so if you have a question, you should consult with your supervisor or manager or, if the circumstances warrant, the chief financial officer or chief legal officer of the Company… Covered Parties are prohibited from taking for themselves opportunities that are discovered through the use of corporate property, information or position without the consent of the Board of Directors of the Company. No Covered Party may use corporate property, information or position for improper personal gain, and no employee may compete with the Company directly or indirectly. Covered Parties owe a duty to the Company to advance its legitimate interests whenever possible.

(ECF No. 88 ¶ 106.) Specifically, Defendant alleges, and Plaintiff admits, that she received compensation for testimony as an expert witness regarding claims handling process in a separate case against her former employer, State Farm Insurance. Moreover, Defendant alleges, and Plaintiff admits, that she did not disclose this information to Defendant or receive permission to

testify from Defendant in advance of doing so. (ECF No. 87-2, at 7.) Defendant alleges that this is in violation of their Policy. Plaintiff does not view it as such. Regardless of the Plaintiffs viewpoint, the Defendant has put forth a legitimate non-retaliatory basis for terminating the Plaintiff.

C.  <u>Pretext Analysis</u>

If a legitimate non-retaliatory basis is provided, as is here, then the burden shifts to the Plaintiff to show that the proffered reason for Plaintiff's termination, the violation of Defendant's Policy, is pretextual. Plaintiff alleges multiple bases that the reason given by the Defendant is pretextual. First, Plaintiff alleges that the temporal proximity between the protected activity and adverse action, in addition to establishing causation, indicates the Defendant's adverse action as being pretextual. (ECF No. 92, at 9.) Second, Plaintiff alleges that James Scalise admitted the Policy that Defendant's assert Plaintiff violated did not explicitly prohibit giving expert testimony. (ECF No. 92, at 9.) Finally, Plaintiff alleges that Defendant, through the testimony of Scalise, admitted that they were in possession of information relating to Plaintiff's prior expert testimony for as long as two months prior to Plaintiff's termination, thereby, making Defendant's discovery of this information through Plaintiff's deposition pretextual. (ECF No. 92, at 10.)

Defendant argues that the reasons for Plaintiff's termination were not pretextual because the conduct that Plaintiff was terminated for was distinct and separate from her participation in her deposition. (ECF No. 95, at 6.) Defendant argues that Plaintiff received compensation for her expert testimony, that she testified about Defendant's claims handling process during her case, and that she did not disclose nor get permission from Defendant to testify in that case, all in violation of the Policy. (ECF No. 87-2, at 31; ECF No. 87-3, at 41–59.) Furthermore, Defendant claims that while Scalise was aware of the potential conduct in violation of Defendant's Policy prior to

Plaintiff's deposition in this case, the deposition confirmed this conduct, by the Plaintiff's own sworn testimony, which resulted in her termination. (ECF No. 92-5, at 23–28.)

First, turning to Plaintiff's temporal proximity argument, Plaintiff attempts to argue that temporal proximity, alone, is sufficient to defeat summary judgment and establish pretext. (ECF No. 92, at 8 (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 224, 307 (3d Cir. 2012)).) While the Court agrees that this is true in certain contexts, it is not true in this case for the reasons set forth below. There is more than sufficient undisputed factual evidence on the record to show that Defendant's legitimate non-discriminatory reason for terminating Plaintiff was not pretextual, irrespective of the temporal proximity of the protected activity and the termination.

The fact that Plaintiff was fired for her violation of the Policy, considering her admissions of her conduct, provides this Court with a clear legitimate non-discriminatory basis for her termination. Plaintiff alleges that Defendant, through Scalise, admits that Plaintiff's conduct was not in direct violation of the Policy. Defendant, on the other hand, claims that there was a violation of the Policy. While the Policy may not have stated with specificity that an employee should not testify in a proceeding against a competitor using the training, materials, technology or equipment of the employer, moreover, without the advance notice and permission of the employer, this Court finds the policy does provide sufficient and clear direction as to what is and is not acceptable from an employee in order to avoid a conflict of interest and reduce or eliminate risk. That is in fact what happened in this case by the Plaintiff's own admission. And it is the Plaintiff's admission under oath which provides the basis for the Court to reach an incontrovertible conclusion, the Defendant reasonably believed that Plaintiff violated the conflict-of-interest Policy and created risk for USLI. Specifically, the Court finds that Plaintiff "receive[d] improper personal benefits as a result of [] her position at the Company" and that she did not "consult with [her] supervisor or

manager." (ECF No. 88 ¶ 106.) Furthermore, the Court finds that Plaintiff "use[d] corporate property, information, or position for improper personal gain." (*Id.*) Plaintiff admitted, in her sworn testimony that she did not receive permission from her supervisor or manager to participate as an expert witness in a matter. (ECF No. 87-3, at 42:6–8; 50:5–7; 64–66.) Furthermore, Plaintiff admitted that she testified whether standards in an unrelated case were "inconsistent with any of the standards that USLI follows," to which she answered, "I said 'they are not inconsistent.'" (ECF No. 87-3, at 51:19–25.) Plaintiff testified that she did not have authority to testify about that. (ECF No. 87-3, at 52:1–3.) Plaintiff further testified that she used her experience at USLI to offer testimony in a separate case. (ECF No. 87-3, at 52:7–23.) Plaintiff also used USLI's computer systems to scan and send a copy of her expert report. (ECF No. 87-3, at 66:2–5.) There is no genuine dispute of material fact, as seen through Plaintiff's own sworn testimony, that she violated the Policy.

Next, the Court does not find the fact that Scalise was in possession of information regarding Plaintiff's expert testimony for two months to be completely accurate—at least not in the manner that Plaintiff presents it in her briefing. Context matters and needs to be considered to properly evaluate this argument. Scalise, in his deposition, says that he received the "motion papers" about Plaintiff's testimony "recently in the context of [this case's] depositions being scheduled." (ECF No. 92-5, at 24.) Scalise then testifies that he has had the information for "maybe a month or two maybe" and that "it would have been February" that he received such information. (ECF No. 92-5, at 24.) Notably, February was the same month that Plaintiff was deposed and the same month that she was terminated. This fact contradicts the argument as to temporal proximity being sufficient to establish pretext by the Defendant. Scalise was deposed on March 15, 2023. (ECF No. 92-5, at 3.) Plaintiff's claim that Scalise was in possession of information relating to

Plaintiff's testimony for "almost two months" is not an accurate representation of the facts. Scalise was in possession of the information for almost two months at the time of his deposition in March of 2023, Scalise did not possess this information for two months prior to Plaintiff's termination. Thus, it should not be surprising that the Court is not convinced by the Plaintiff's assertions in response to the Defendant's argument on this issue. Plaintiff has not met their burden of showing pretext. As a result, Defendant's Motion for Summary Judgment is granted as to Plaintiff's retaliation claims.

ii.    *Failure to Accommodate*

A plaintiff who alleges a failure to accommodate claim under the ADA and PHRA must show that (1) she is disabled, (2) she is qualified, and (3) her employer (i) refused to provide her with a proposed reasonable accommodation, or (ii) failed to engage in an interactive process after she requested an accommodation, though a reasonable accommodation was possible. *Solomon v. School Dist. of Phila.*, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012). If a plaintiff succeeds in their claim, the defendant must show that the proposed accommodations were not reasonable, would have caused an undue hardship, or that the employer proposed a reasonable accommodation that the plaintiff rejected. *Id.* Neither party disputes that Plaintiff had a disability. However, Defendant disputes that Plaintiff was a "qualified individual," and that Plaintiff was denied a reasonable accommodation.

A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires." 42 U.S.C. § 12111(8). The burden is on the employee to prove that they are an otherwise qualified individual. *Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 579 (3d Cir. 1998). There is a two-prong test in determining whether an employee is a qualified

individual with a disability. First, the Court must consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id.* at 580. Second, the Court must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.* This determination is made at the time of the employment decision, that is, the determination should be based on the capabilities of the individual with a disability at the time of the employment decision. *Id.* (citing 29 C.F.R. pt. 1630, App. At 353–54). Thus, the Court considers whether Plaintiff has demonstrated a genuine issue of material fact regarding her ability to perform the essential functions of her job with a reasonable accommodation.

There is no genuine dispute of material fact as to whether Plaintiff was a "qualified individual." Plaintiff admits, in her deposition, taken under oath, that she was unable to work with or without reasonable accommodations from May of 2021 through October of 2023. (ECF No. 87-3, at 226.) While the Plaintiff asserts that she was denied accommodation requests after May of 2021, this assertion does not override the Plaintiff's concession that she was "unable to work with or without accommodations from May of 2021 until October of 2023." (ECF No. 87-3, at 226:20–23.) A plaintiff who cannot, with or without reasonable accommodation, perform the essential functions of a position, is not a qualified individual. *Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 579 (3d Cir. 1998). This admission, as the Defendant correctly states, renders the Plaintiff unqualified. As a result, the Motion for Summary Judgment will be granted as to Plaintiff's failure to accommodate claims under the ADA and PHRA, since the same test is used and facts applied.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in its entirety. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

_____

**HODGE, KELLEY B., J.**